CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/4/2024

LAURA A. AUSTIN, CLERK
BY:   s/ CARMEN AMOS
        DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

**ASTORG IMPORTS, INC. DBA
ASTORG DODGE CHRYSLER JEEP
P.O. Box 1725
Parkersburg, West Virginia, 26102**

       **Plaintiff,**

**v.**                                 **Civil Action No.:**  **6:24CV00044**

**THE RENAISSANCE COMPANIES OF VIRGINIA, INC.;
dba RENAISSANCE CHRYSLER DODGE JEEP RAM;
and dba RENAISSANCE FORD**

**Serve:** **URS Agents LLC
       7288 Hanover Green Dr Ste A,
       Mechanicsville, Virginia, 23111 - 1709**

**and**

**JAMAR BRINKLEY,**

**Serve:** **8801 Fast Park Dr Ste 301,
       Raleigh, NC, 27617 - 4853**

       **Defendants.**

## **COMPLAINT**

      Plaintiff, Astorg Imports, Inc. (d/b/a Astorg Dodge Chrysler Jeep) (hereinafter "Astorg"),

by and through its undersigned counsel, for its Complaint against Defendants, The Renaissance

Companies Of Virginia, Inc. (d/b/a Renaissance Chrysler Dodge Jeep Ram; and d/b/a

Renaissance Ford) (hereinafter "Renaissance") and its principal Jamar Brinkley (hereinafter

"Brinkley"), alleges as follows:

### **NATURE OF THE ACTION**

1.   This is an action for breach of contract and fraud arising from a transaction in which

     Astorg and Renaissance engaged in a vehicle trade and monetary exchange that resulted

in Renaissance's failure to honor its obligations to provide compensation and essential documentation for a vehicle, thereby causing financial harm and damages to Astorg.

2.    Thereafter, Renaissance's principal Brinkley likewise failed to honor his financial obligation and to provide essential documentation for a vehicle, thereby causing financial harm and damage to Astorg.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    In addition, or in the alternative, this Court also has federal-question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Renaissance committed an act of mail fraud under 18 U.S.C. § 1341, which is actionable under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), *per* 18 U.S.C. § 1964(c).

5.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6.    Plaintiff Astorg is a corporation organized and existing under the laws of the State of West Virginia, with its principal place of business located in Parkersburg, West Virginia.

7.    Defendant Renaissance is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business located at 8801 Fast Park Dr. Suite 301, Raleigh, NC 27617.

8.   Defendant Brinkley is an individual who, based on information and belief, is a resident of and is domiciled in the state of North Carolina, with an address of 8801 Fast Park Dr Suite 301, Raleigh, NC, 27617.

## FACTUAL ALLEGATIONS

9.   Renaissance is a Chrysler, Dodge, Jeep, and Ram dealership which markets and sales new and used Dodge Chargers and Jeep Gladiators, among other vehicles.

10.   Renaissance also operates a Ford dealership known as Renaissance Ford, which may be a current or past fictitious name for Renaissance.

11.   Vehicle trades between dealerships are a common practice in the automotive industry.

12.   Renaissance is a sophisticated party and knowledgeable about car sales, car values, and dealer trades.

13.   Astorg had a customer interested in a particular make, model, year, and trim of a Jeep Gladiator that Renaissance held in its possession.

14.   On or around January 5, 2024, Astorg contacted Renaissance about doing a dealer trade to exchange a vehicle and monies for a Jeep Gladiator and monies.

15.   Renaissance freely negotiated which vehicles would be traded and how much money would be exchanged between the parties.

16.   This negotiation was an arms' length transaction amongst sophisticated parties knowledgeable about the exchange.

17.   The Renaissance representative negotiating this deal had the full authority to bind Renaissance to the terms and conditions of said deal.

18.   Astorg and Renaissance discussed the dealer trade and expressed mutual interest and ultimately agreed to the terms.

3

19. On or about January 5, 2024, Astorg and Renaissance entered into a contract whereby Astorg agreed to trade (i) a 2023 DODGE CHARGER R/T RWD LDDP48, Vehicle Identification Number 2C3CDXCT5PH700400 (hereinafter the "2023 Charger RT") and (ii) a $61,413 check to Renaissance in exchange for (A) a 2023 JEEP GLADIATOR MOJAVE 4X4 JTJH98, Vehicle Identification Number 1C6JJTEG6PL571050 (hereinafter the "2023 Jeep Gladiator") and (B) a $48,802 check from Renaissance.

20. It was further agreed that Astorg would transport the 2023 Charger RT from Parkersburg, West Virginia to Renaissance's Altavista, Virginia location, then exchange vehicles, checks, and necessary documentation, then Astorg would transport the 2023 Jeep Gladiator back to Parkersburg, West Virginia.

21. Pursuant to the agreement, Astorg traveled to Renaissance's Virginia location with the 2023 Charger RT and a $61,413 check, as agreed.

22. Upon arrival, Renaissance informed Astorg's delivery driver that it did not have the $48,802 check or the Manufacturer's Statement of Origin ("MSO") for the 2023 Jeep Gladiator readily available, but it was willing to exchange the 2023 Jeep Gladiator then mail the check and MSO to Astorg.

23. A vehicle's MSO is a statement of origin delivered by the manufacturer to a dealer – which certifies that the new vehicle is the dealership's property and enables the dealer to provide a customer title to that vehicle.

24. An MSO is essentially the first title to a vehicle.

25. Renaissance promised Astorg's delivery driver that it would issue the agreed $48,802 check and mail it and the MSO to Astorg's Parkersburg, West Virginia office.

4

26. In reliance upon these representations, Renaissance's inducement, and the parties' contract, Astorg conveyed the 2023 Charger RT (complete with MSO) and a $61,413 check to Renaissance.

27. Renaissance then provided the keys to the 2023 Jeep Gladiator and knowingly observed Astorg leave en route to transport this vehicle to Parkersburg, West Virginia.

28. Renaissance never expressed any disagreement to the parties' arrangement or told Astorg that it was unable to complete its contractual obligations.

29. Renaissance mailed a signed check, numbered 30948 and dated January 8, 2024, in the amount of $48,802 to Astorg's address at 1501 Seventh Street, Parkersburg, WV 26101, attached here as Exhibit A.

30. Astorg attempted to deposit this check upon receipt, but the check "bounced" due to insufficient funds.

31. This bad check constituted a breach of the parties' agreement.

32. Renaissance did not have adequate funds available when it wrote check number 30948.

33. In the alternative, Renaissance did not maintain adequate funds available after it wrote check number 30948.

34. Renaissance did deposit Astorg's check and $61,413 was transferred from Astorg to Renaissance.

35. Renaissance accepted the 2023 Charger RT and, at least at the time of the transfer, held title to that vehicle, clean and outright.

36. Renaissance sold the 2023 Charger RT to a third party.

37. Astorg repeatedly demanded payment and the 2023 Jeep Gladiator's MSO from Renaissance in January and February 2023 but Renaissance could not or did not provide the MSO.

38. Astorg completed all of its obligations under the parties' agreement.

39. Renaissance willfully transferred possession of the 2023 Jeep Gladiator to Astorg.

40. Renaissance's transfer of the 2023 Jeep Gladiator to Astorg represents part, but not complete, performance of the parties' contract.

41. Renaissance failed to respond to multiple communications from Astorg and its counsel.

42. On February 19, 2024, Jamar Brinkley, in his capacity as Renaissance's principal, emailed Astorg's counsel stating, "Sorry for the delay. I have all intentions to make this right, but currently dealing [sic] with a massive amount of issues." Mr. Brinkley's email represented "I will work to get this resolved in the next 5 to 7 days." Mr. Brinkley reaffirmed, "Again, I will make it right."

43. The clear language of this communication suggests that Jamar Brinkley was going to personally remedy the situation.

44. Those seven days came and passed without any resolution of the issues or even an update from Renaissance or Mr. Brinkley. Astorg's counsel emailed Mr. Brinkley on February 26, 2024, and told him that an immediate resolution is necessary and stressed the importance of resolution.

45. Mr. Brinkley responded on February 27, 2024, and again apologized for the delay in his response and represented that "As far as payment, if all possible [sic], I have plans to process later this week/next. I have my team working to get the MCO [sic] to them. I will keep you posted."

46. Mr. Brinkley was stalling for time and did not provide any updates to Astorg despite telling its counsel he would "keep you posted."

47. Renaissance did not provide the 2023 Jeep Gladiator's MSO to Astorg until March 10, 2024, following weeks of demands from the undersigned counsel and under the threat of litigation.

48. As of the filing of this Complaint, Renaissance has not paid the $48,802 owed to Astorg.

49. As a direct and proximate result of Renaissance's and Brinkley's actions, Astorg has suffered damages including but not limited to financial losses and damage to its reputation.

50. Renaissance obtained title to the 2023 Charger RT, which had an MSRP of $51,725.

51. Renaissance deposited Astorg's $61,413 check and obtained those funds.

52. Renaissance has paid zero dollars ($0.00) of the $48,802 it agreed to pay by check to Astorg.

53. The 2023 Jeep Gladiator's MSRP was $66,330.

54. Astorg incurred additional damages in trying to obtain payment and the MSO.

**COUNT I - BREACH OF CONTRACT AGAINST RENAISSANCE**

55. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56. Renaissance and Astorg entered into an agreement for the dealer trade at issue in this matter.

57. The parties' agreement constitutes a valid contract.

58. Astorg met all terms of the parties' contract.

59. A material and express term of the contract was that Renaissance would pay $48,802 to Astorg.

60. Renaissance's failure to pay $48,802 to Astorg is a material breach of the parties' contract.

61. The funds due and the MSO were withheld for an unreasonable amount of time.

62. Renaissance's failure to timely provide the agreed check, funds, and MSO are an each, independent material breaches of the parties' contract.

63. Any or all of Renaissance's failures to abide by the parties' contract constitute a material breach of contract, collectively or individually.

64. As a direct result of Renaissance's breach, Astorg has suffered damages in an amount to be determined at trial.

## COUNT II - BREACH OF IMPLIED CONTRACT AGAINST RENAISSANCE

65. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66. An implied contract was formed between Astorg and Renaissance based on the parties' conduct, business practices, and the circumstances surrounding their transaction, which created mutual obligations beyond those outlined in any written agreement.

67. Under the terms of this implied contract, Renaissance was obligated to ensure the transfer of a clear title for the 2023 Jeep Gladiator to Astorg by providing the MSO and to honor its financial commitment by ensuring the $48,802 check was valid and would be processed without issue.

68. Renaissance breached this implied contract by failing to timely provide the MSO for the 2023 Jeep Gladiator until months later and by providing a check that was dishonored.

69. Failing to timely provide the MSO and available funds is a material breach of this implied contract.

70. As a direct and proximate result of Renaissance's breach of the implied contract, Astorg suffered damages including, but not limited to, financial losses associated with the inability to complete the sale of the 2023 Jeep Gladiator, harm to its business reputation, and additional costs incurred in attempting to rectify the situation.

**COUNT III - UNJUST ENRICHMENT AGAINST RENAISSANCE**

71. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

72. By retaining the benefits of the trade, including the 2023 Charger RT ($51,725 MSRP) and the $61,413 check from Astorg, without providing the agreed-upon 2023 Jeep Gladiator MSO and the $48,802 as agreed, Renaissance has been unjustly enriched at the expense of Astorg.

73. Renaissance received approximately $113,138 worth of value (2023 Charger RT's MSRP plus Astorg's $61,413 check).

74. Renaissance only exchanged a 2023 Jeep Gladiator ($66,330 MSRP once it obtained the title) for the $113,138 worth of value it received.

75. Renaissance did not provide the MSO for the 2023 Jeep Gladiator until March 10, 2024.

76. Astorg suffered damages due to Renaissance's failure to timely provide the MSO for the 2023 Jeep Gladiator.

77. It would be inequitable and unjust for Renaissance to retain the benefits of the transaction without fulfilling its obligations as agreed upon, causing Astorg to suffer losses.

78. As a proximate result of Renaissance's unjust enrichment, Astorg has suffered damages in an amount to be determined at trial.

**COUNT IV – FRAUD OR CONSTRUCTIVE FRAUD AGAINST RENAISSANCE**

79. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

80. The essential elements in an action for fraud are: (1) false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by party misled, and (6) resulting damage to party misled. *Evaluation Rsch. Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).

81. Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it. *Alequin* 247 Va. at 148.

82. Renaissance sells new and used Dodge Charger RTs and Jeep Gladiators; and therefore, is reasonably knowledgeable about their value.

83. Renaissance utilizes MSOs in its daily business and understands their importance.

84. Renaissance negotiates and executes dealer trades in its business.

85. Renaissance understands from its knowledge of MSOs and past course of conduct in executing dealer trades that MSO's are necessary and required to be exchanged as part of a dealer trade.

86. Renaissance freely agreed to the terms of this dealer trade prior to Astorg traveling to Virginia.

87. Renaissance reviewed the available vehicles in Parkersburg, West Virginia and determined that it desired the 2023 Charger RT plus an agreed amount of monies payable by check.

88. Renaissance freely entered into a contract to obtain the 2023 Charger RT and monies from a dealership located in Parkersburg, West Virginia.

89. Renaissance understood and agreed that both the 2023 Charger RT and the 2023 Jeep Gladiator would be transported across West Virginia as part of the transaction.

90. Renaissance had prior knowledge that Astorg was traveling to its location expecting both the MSO and a check for the agreed sum of $48,802 upon arrival.

91. Renaissance never informed Astorg that it would not or could not provide the MSO or agreed check before Astorg arrived at Renaissance's place of business.

92. Renaissance did not inform Astorg that it did not have the check and MSO readily available until Astorg had transported the 2023 Charger RT over three hundred miles from its Parkersburg location, through West Virginia, and arrived at Renaissance's Altavista, Virginia location.

93. Renaissance then told Astorg that if it would provide a check and the 2023 Charger RT, then Renaissance would mail its own check and the MSO to Astorg's Parkersburg, West Virginia location.

94. The false representation that Renaissance would provide the check and MSO was a material fact to the parties' agreement.

95. Renaissance knew or should have known that it was unable to transfer the MSO to the 2023 Jeep Gladiator or pay the funds due to Astorg when Astorg arrived at Renaissance's place of business.

96. Renaissance knew or should have known that it was unable to transfer the MSO to the 2023 Jeep Gladiator or pay the funds due to Astorg prior to Astorg's travel to Virginia.

97. Renaissance knew or should have known that it was unable to transfer the MSO to the 2023 Jeep Gladiator or pay the funds due to Astorg prior to agreeing to the terms of this dealer trade.

98. Nevertheless, Renaissance intentionally and knowingly mislead Astorg to induce it to transfer the 2023 Charger RT, the title to the same, and a check conveying funds to Renaissance.

99. Renaissance obtained clear title to the 2023 Charger RT and sold that vehicle for profit without paying just compensation to Astorg.

100. Renaissance deposited Astorg's check in its account – knowing it did not complete its transaction with Astorg – but nevertheless converted Astorg's monies paid.

101. At all times, Renaissance, a sophisticated business knew its own financial standing.

102. At all times relevant, Renaissance, is imputed with knowledge as to its own financial standing.

103. Therefore, it is reasonably conclusive that Renaissance knew it lacked sufficient funds to pay the agreed $48,802 to Astorg, but nevertheless, it fraudulently told Astorg that it would pay those funds.

104. Renaissance told Astorg it would pay $48,802 specifically to induce Astorg into transferring ownership of the 2023 Charger RT and monies.

105. Further, once Renaissance cashed Astorg's $61,413 check, Renaissance *de facto* would have over $48,802 in available funds to pay the return amount to Astorg unless it used Astorg's paid money for another purpose.

106. It is likely that Renaissance has taken the funds from this transaction to fund one or more other creditors in an attempt to "rob Peter to pay Paul."

107. At all times relevant, Renaissance had access to the information necessary to determine if it had the ability to provide the 2023 Jeep Gladiator's MSO as part of this exchange.

108. When Renaissance accepted Astorg's check and the 2023 Charger RT, Renaissance knew that it did not have the ability to transfer title to the 2023 Jeep Gladiator.

109. When Renaissance accepted Astorg's check and the 2023 Charger RT, Renaissance should have known that it did not have the ability to transfer title to the 2023 Jeep Gladiator.

110. Prior to accepting the 2023 Charger RT, Renaissance never informed Astorg that it would have any difficulties obtaining the MSO to the 2023 Jeep Gladiator.

111. Therefore, it is reasonably conclusive that Renaissance knew it did not possess the 2023 Jeep Gladiator's MSO but nevertheless told Astorg that it would exchange that vehicle as an inducement for Astorg to transfer money and the 2023 Charger RT to Renaissance.

112. Astorg would not have transferred the 2023 Charger RT or the monies paid but for Renaissance's false representations that it would timely provide the MSO and a check to Astorg for the agreed amount.

113. It was reasonable for Astorg to believe Renaissance held the MSO to the vehicle it agreed to exchange, when the parties agreed to the terms of their agreement.

114. It was reasonable for Astorg to believe that Renaissance's representatives did not have the check or MSO readily available when Astorg arrived for innocent reasons (e.g., simple forgetfulness or that specific employee didn't know where they were).

115. It was reasonable for Astorg to believe that Renaissance would honor the dealer trade and timely provide the funds and MSO to Astorg by mail, as Renaissance represented.

116. Renaissance then mailed a check that it knew or should have known would not be honored by its bank because Renaissance lacked sufficient funds.

117. Renaissance nevertheless mailed a check to Astorg knowing that Astorg would attempt to cash that check but the funds were unavailable.

118. Astorg, receiving a check for the amount agreed, reasonably relied upon Renaissance and attempted to cash this check but it failed to clear (a/k/a it bounced) for insufficient funds.

119. During all of these acts, Astorg relied on Renaissance's representations to its detriment, resulting in financial loss and other damages.

**COUNT V - CIVIL ACTION FOR MAIL FRAUD AGAINST RENAISSANCE**

120. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 119 as if fully set forth herein.

121. Renaissance's act of sending a check that was subsequently dishonored can be construed as part of a scheme to defraud Astorg by obtaining property (the 2023 Charger RT and the $61,413 check) under false pretenses, representations, or promises.

122. The use of the United States Postal Service to mail the dishonored check constitutes an act of mail fraud under 18 U.S.C. § 1341, which is actionable under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), allowing Astorg to seek treble damages and attorney's fees.

123. As a direct and proximate result of Renaissance's fraudulent actions, Astorg suffered damages in an amount to be proven at trial, including but not limited to the value of the property fraudulently obtained by Renaissance.

124. As a direct and proximate result of Renaissance's fraudulent actions, Astorg suffered damages in an amount at least three times $48,802.

**COUNT VI - BREACH OF CONTRACT AGAINST BRINKLEY**

125. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 124 as if fully set forth herein.

126. On February 19, 2024, Mr. Brinkley, in his capacity as the owner of Renaissance, personally communicated with Astorg via email, stating, "I [Mr. Brinkley] will make it right," and promised to cure the breach related to the transaction involving the 2023 Jeep Gladiator and the dishonored check within 5-7 days.

127. Mr. Brinkley's statement constituted a personal promise and thus formed a contract under which he had a personal obligation to ensure the breach was cured within the specified timeframe.

128. In the alternative, Mr. Brinkley's statement served as a personal guarantee of Renaissance's debt.

129. Mr. Brinkley failed to fulfill his promise within the stipulated timeframe, directly breaching his contractual obligation to Astorg.

130. As a direct and proximate result of Mr. Brinkley's breach of contract, Astorg has suffered damages in an amount to be determined at trial.

**COUNT VII - BREACH OF IMPLIED CONTRACT AGAINST BRINKLEY**

131. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 130 as if fully set forth herein.

132. By stating "I [Mr. Brinkley] will make it right" and promising a specific timeframe for resolution, Mr. Brinkley created an implied contract, whereby he personally undertook the obligation to rectify the existing contractual breaches, implying that all necessary actions would be taken to fulfill this promise.

133. Mr. Brinkley's failure to act within the promised timeframe and to effectuate the cure constitutes a breach of the implied contract.

134. As a direct result of Mr. Brinkley's breach of the implied contract, Astorg has incurred damages in an amount to be determined at trial.

**COUNT VIII - FRAUD AGAINST BRINKLEY**

135. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 134 as if fully set forth herein.

136. Mr. Brinkley's assurance, as stated in his February 19, 2024, email, was made with the knowledge of the existing circumstances that would prevent the fulfillment of his promise, or with reckless disregard for the truth.

137. Mr. Brinkley's subsequent February 27, 2024, email was also made with the knowledge of the existing circumstances that would prevent the fulfillment of his promise, or with reckless disregard for the truth.

138. Both communications were made in an attempt to stall for time but without any actual intent or ability to remedy the situation.

139. Both communications were intended to mislead Astorg or knowingly provide false information.

140. Mr. Brinkley has not attempted to make any partial payment, provide the MSO for the 2023 Jeep Gladiator or taken any apparent attempt to "make it right."

141. Mr. Brinkley and Renaissance continue to perpetuate a fraud upon Astorg and continue to cause Astorg continued damages.

142. Astorg relied on Mr. Brinkley's assurance to its detriment, under the reasonable belief that Mr. Brinkley had the intention or ability to rectify the matter within the promised timeframe.

143. As a result of relying on Mr. Brinkley's fraudulent misrepresentation, Astorg has suffered damages, including but not limited to, additional financial losses, harm to its business reputation, and the loss of goodwill among its customers.

## COUNT IX – TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP

144. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 143 as if fully set forth herein.

145. Here, the sole purpose of this dealer trade was because Astorg had a customer interested in this specific 2023 Jeep Gladiator.

146. Astorg communicated to Renaissance that it had a customer interested in purchasing the 2023 Jeep Gladiator and thus wished to perform a dealer trade so that it could sell this vehicle to a specific customer.

147. Renaissance at all times relevant knew that Astorg intended to sell the subject vehicle to its customer.

148. Renaissance, as a car dealer who performs its own dealer trades, understood that Astorg had a potential sale of this 2023 Jeep Gladiator lined up.

149. The sale of a vehicle to a customer constitutes the existence or expectancy of a contractual or business relationship between Astorg and a customer.

150. Renaissance, as a sophisticated car dealer who sells these make and model vehicles to its own customers, understands the implications and damages that could arise should it transfer a vehicle without the accompanying MSO.

151. Renaissance, nevertheless, breached its contract, committed the tort of promissory estoppel, and/or engaged in tortious fraud which interfered with the marketability of the 2023 Jeep Gladiator, and diminished the value of that vehicle.

152. Renaissance tortiously failed to timely convey the MSO and the failure to do so interfered with the reasonably expected time frame of the expected or actual contract.

153. Astorg sustained damages as a proximate result of Renaissance's tortious interference with the actual or expected sales contract with its customer.

154. Renaissance caused these damages out of fraud and in a willful or wanton attempt to further its improper financial gain to Astorg's detriment.

### COUNT X – CONVERSION AGAINST RENAISSANCE

155. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 154 as if fully set forth herein.

156. Astorg owned and held title to the 2023 Charger RT.

157. Astorg owned the funds paid to Renaissance by check.

158. The 2023 Charger RT and the monies paid are forms of chattel.

159. Renaissance failed to provide full compensation for the 2023 Charger RT or the monies paid.

160. Nevertheless, Renaissance maintains or maintained dominion or control over the 2023 Charger RT and the funds transferred by said check.

161. Renaissance wrongfully obtained dominion or control of the 2023 Charger RT and these funds by fraud or duress.

162. Renaissance has converted the dominion, control, or ownership of the 2023 Charger RT and these funds.

163. Astorg sustained damages by Renaissance's past, current, and future conversion of these assets.

## COUNT XI – CLAIM FOR PUNITIVE DAMAGES

164. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 163 as if fully set forth herein.

165. Renaissance's conduct, including fraud, conversion, its apparent transfer of property to which it does not possess title, lack of honesty with Astorg, and its repeated inappropriate actions inducing Astorg into detrimental positions constitute acts committed with actual malice toward Astorg.

166. In the alternative, Renaissance's conduct was carried out with a willful and wanton disregard for Astorg.

167. Renaissance has converted Astorg's property and money for its own purposes with no intentions of honoring its agreement.

168. Renaissance's acts were also committed with a conscious, reckless and outrageous indifference.

169. Punitive damages are merited to compensate Astorg for Renaissance's outrageous conduct and protect future parties from Renaissance's bad acts.

## COUNT XII – CLAIM FOR SPECIFIC PERFORMANCE

170. Astorg realleges and incorporates by reference the allegations contained in paragraphs 1 through 169 as if fully set forth herein.

171. Renaissance is obligated by the terms of the parties' agreement to pay $48,802 to Astorg.

172. Astorg completed all material conditions of the parties' agreement.

173. Astorg does not have an adequate remedy at law because the 2023 Jeep Gladiator at issue and the 2023 Charger RT are reasonably unique and identifiable by their VIN numbers.

174. Further, it would be more detrimental, unreasonably costly, and involve risk to reverse the exchange of these assets, including transporting vehicles across state lines.

175. Astorg is also doubtful that Renaissance maintains possession of the 2023 Charger RT.

176. Astorg further had a sale arranged for this 2023 Jeep Gladiator to a customer that could not be completed without the vehicle.

177. Additionally, if Renaissance does not have the $48,802 to pay then it doesn't have the $61,413 to return to Astorg.

178. Therefore, this court should order Renaissance to immediately pay the $48,802 in order to complete the agreed terms of this transaction and put Astorg in the position it would have been had Renaissance completed the transaction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Astorg Imports, Inc. (d/b/a Astorg Dodge Chrysler Jeep), respectfully

requests that this Court:

A.  Award damages against Renaissance in an amount to be determined at trial for the claims

presented herein;

B.  An order specific performance or any other appropriate equitable relief to compel

Renaissance to fulfill its obligations, including payment to Astorg for the 2023 Jeep

Gladiator;

C.  Award damages against Brinkley in an amount to be determined at trial;

D.  Award pre-judgment and post-judgment interest on any amounts awarded;

E.  Award Astorg its costs and expenses incurred in this action, including reasonable

attorney's fees for all claims;

F.  An award of punitive damages;

G.  An award of treble damages; and

H.  Grant such other and further relief as the Court deems just and proper against

Renaissance and/or Brinkley.

Respectfully submitted,

**Astorg Imports, Inc. dba**
**Astorg Dodge Chrysler Jeep**

By Counsel,

/s/ Luke T. Schmitt, Esq.
Luke T. Schmitt (Va. Bar No. 79731)
Flaherty Sensabaugh Bonasso PLLC
Post Office Box 6545
Wheeling, West Virginia 26003
Telephone: (304) 230-6661
Facsimile: (304) 230-6610